## A96A2186. MARION v. THE STATE.
### (480 SE2d 869)

BEASLEY, Judge.

Marion was convicted on four of six counts of aggravated assault (OCGA § 16-5-21 (a) (2)) and one count of misdemeanor theft by shoplifting (OCGA § 16-8-14 (a) (1), (b) (1)).

Evidence showed department store security personnel observed Marion shoplifting, approached him, and began to escort him to the security office. Marion broke away, produced a knife, confronted security officer Powell with it, and ran out of the store into the enclosed mall with security officer Scheirer in pursuit. In the mall off-duty sheriff's deputy Agasarkisian confronted Marion, who stabbed at him with the knife. Agasarkisian backed away, and when Marion resumed flight, Agasarkisian joined pursuit. He was not in uniform, but his badge and gun were visible.

Marion went back into the department store and then into the parking deck. He encountered a security vehicle from which security guard Elliott emerged and told Marion to stop. Marion displayed the knife and told Elliott to back off. Marion ran out into the parking lot where Jacoby, another off-duty sheriff's deputy, joined the chase.

Still holding the knife, Marion tried to enter two cars and again brandished the knife toward Elliott. While then attempting to enter a public bus, he made an aggressive movement with the knife toward Jacoby, who was giving the bus driver instructions. Marion held on to the bus as it left, but it stopped abruptly, he fell to the ground,

dropped the knife, and was apprehended.

Evidence was also presented concerning Marion's actions towards security officers Scheirer and Ham, who originally approached him, but the jury acquitted Marion of the two counts of aggravated assault based upon those actions.

1. In his first enumeration Marion contends the court's denial of his motion for continuance, made at the beginning of trial, denied him effective assistance of counsel in violation of the Sixth Amendment to the Constitution of the United States and Art. I, Sec. I, Par. XIV of the Constitution of the State of Georgia. See also OCGA § 17-8-33 (a). Trial counsel moved for a continuance because she was hired the Friday before the Monday trial and was not prepared.

"[A] motion for a continuance predicated on the basis of counsel's lack of preparation for trial addresses itself to the sound discretion of the trial [court] and a ruling denying such a motion will not be interfered with unless the [court] has abused [its] discretion in denying the motion. In these cases we have noted that the conduct of the party is a relevant and proper consideration of the [court] in the exercise of its discretion in order to prevent a party using the discharge and employment of counsel as a dilatory tactic. [Cits.]" *Brannon v. State*, 220 Ga. App. 572, 574 (2) (469 SE2d 716) (1996). "In all cases, the party making an application for a continuance must show that he has used due diligence." OCGA § 17-8-20. See *Bates v. State*, 202 Ga. App. 460, 461 (1) (414 SE2d 691) (1992); *Patterson v. State*, 202 Ga. App. 440, 441 (1) (414 SE2d 895) (1992).

Although trial counsel argues on defendant's behalf that counsel is not chargeable with dilatory conduct, that claim does not address whether Marion was dilatory or failed to exercise diligence in retaining counsel. Marion was originally represented by appointed counsel. On Monday, prior to entering a guilty plea pursuant to an agreement, Marion through counsel asked the court to postpone the plea until the next day. Counsel stated Marion "indicated he is going to accept the recommendation, that he has no intention to back out. He wanted to talk to his family, though."

The next day counsel informed the court that Marion had stated he did not want counsel to represent him any further and that he rejected all plea offers. Marion stated he did not want to be represented by his appointed attorney because the plea agreement he had negotiated was not what Marion expected or desired as it pertained to a sentence he was already serving. Marion himself informed the court that his family was going to get an attorney for him.

The court noted that the proceedings had been postponed to allow Marion's family to attend and that they had not done so. The court also told Marion that trial would be set for the next Monday, strongly cautioning him that his retained attorney would have to be

ready then and the fact that "you're just getting a new lawyer is not going to be an excuse to not go forward next Monday morning." The State expressed concern that family members had stated they would be at court that day and had not done so and might not diligently seek to hire an attorney. The court told Marion to have his family there the next day at 8:30 a.m. to discuss the matter.

When Marion's mother arrived the next day, the court denied her request for an additional two weeks to hire an attorney, stating that trial would take place Monday. The court specifically directed her to inform the attorney she hired that the case would be tried Monday and that no continuance would be granted based on that attorney's late entry, a direction which the mother indicated she understood. The court twice advised Marion that he had three options: continue to use appointed counsel, hire one himself or through his family, or represent himself. As Marion was adamant that he did not wish appointed counsel to represent him, the court noted he now had two options: retain counsel or represent himself at trial Monday morning.

The case was called for trial on Monday before a different judge. Retained counsel appeared and moved for a continuance. After some discussion, the court agreed to postpone jury selection until the afternoon and start the trial the next day to enable counsel to meet with former counsel. The new counsel also received the State's discovery package that day. When trial reconvened, the court informed counsel that it would accommodate her need to view evidence or take any similar action.

Although counsel stated at trial that she was not retained until Friday "because the public defender was released on Thursday," that is incorrect. During the proceedings on Wednesday the court definitively announced that appointed counsel would withdraw. The court had stated during the proceedings the day before that such would occur. The order allowing withdrawal of appointed counsel was actually not signed until the day of trial, but there is no indication that the delay in signing the order contributed to retained counsel's lack of preparation. Rather, the situation was clear well before the date of formal withdrawal, and retained counsel was in fact hired before the order was signed.

Marion was told to retain counsel and to inform counsel that a lack of time to prepare for trial would not justify a continuance. Although it is contended on appeal that Marion did not do so and that counsel assumed the case was set for a plea calendar and not for trial, there is no indication that she so informed the court when the case was called for trial. In any event, either counsel had been advised that the case would be tried on Monday and had accepted the case with that knowledge, or Marion had not advised her that the

case would be tried on Monday as the court had directed him to do.

In denying a continuance, the court stated that it believed Marion was "kind of manipulating the system." The prevention of such is the reason the court is permitted to look to the conduct of the party in exercising its discretion on such a motion. *Brannon,* supra; *Bates,* supra. Further, Marion has not suggested what evidence or witnesses he would have put forth in his defense had counsel more time to prepare; he only conjectures that more time to prepare might have resulted in an acquittal on some other counts of aggravated assault. See *Scroggins v. State,* 198 Ga. App. 29, 37 (2) (401 SE2d 13) (1990). The only additional action he contends counsel would have taken if she had additional time is to interview each witness, but he does not explain how that might have altered the result.

"Mere shortness of time does not by itself show a denial of the rights of the accused, and mere shortness of time will not reflect an abuse of the trial court's discretion in denying a continuance, where the case is not convoluted and is without a large number of intricate defenses. [Cit.] This case involves serious issues, but they are not intricate or convoluted." Id. The evidence on the assaults consisted of eyewitness accounts. In these circumstances, we cannot say that the court erred in denying a continuance.

2. In his second enumeration, Marion contends the court erred in denying his request to charge on reckless conduct as a lesser included offense of aggravated assault. OCGA § 16-5-60 (b). He argues that his act of running through the mall with a knife was a reckless act performed with a conscious disregard for a substantial and unjustifiable risk of harm to others. While that may be true, and might have supported Marion being indicted and tried on an additional charge of reckless conduct towards persons not named in the indictment, the question is whether the evidence concerning his actions towards those named as victims in the indictment warranted a reckless conduct charge.

Reckless conduct is a crime of criminal negligence. See *Briard v. State,* 188 Ga. App. 490, 493 (5) (373 SE2d 239) (1988); *Weaver v. State,* 185 Ga. App. 573, 574 (365 SE2d 130) (1988); *Bowers v. State,* 177 Ga. App. 36, 38 (1) (338 SE2d 457) (1985). Marion does not indicate how his actions toward his named victims constituted criminally negligent, reckless conduct except to say that at all times he was attempting to flee. He does not cite any portion of the transcript to support a right to the charge. He does cite portions of the transcript for the contention that he was at all times fleeing security, at least as the transcript pertains to his actions constituting the four assaults of

which he was convicted.[1] Testimony concerning flight through the mall would pertain to a separate charge of reckless conduct, not to the indicted charges. There is no testimony that would support a finding that Marion's brandishing of the knife in the presence of the named victims was only criminally negligent rather than intentional. That he committed aggravated assault as he tried to flee does not change the character of his actions with the knife.

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JANUARY 30, 1997.

*Cathy M. Alterman*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Donald T. Phillips, Assistant District Attorneys*, for appellee.

---

[1] Marion also cites testimony concerning his actions towards Scheirer and Ham, but as he was acquitted of assault as to these witnesses, any refusal to charge reckless conduct based upon those actions would be harmless error.